*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0301P (6th Cir.)
File Name: 02a0301p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CORTEZ SCOTT,
     *Petitioner-Appellant,*

     *v.*

No. 01-1475

FRANK ELO, Warden,
     *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-71894—Victoria A. Roberts, District Judge.

Argued: August 8, 2002

Decided and Filed: September 6, 2002

Before: KENNEDY, SUHRHEINRICH, and
BATCHELDER, Circuit Judges.

_____

### COUNSEL

**ARGUED:** James Sterling Lawrence, Detroit, Michigan, for Appellant. Janet A. Van Cleve, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee. **ON BRIEF:** James Sterling Lawrence, Detroit, Michigan, for Appellant. Janet A. Van Cleve, OFFICE OF THE ATTORNEY GENERAL,

HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.

———————————

## OPINION

———————————

KENNEDY, Circuit Judge. Petitioner Cortez Scott appeals the denial of his application for writ of habeas corpus. For the following reasons, we affirm the judgment of the district court.

### I.

Following a jury trial in Genesee County (Michigan) Circuit Court, petitioner Cortez Scott was convicted of first degree murder and possession of a firearm during the commission of a felony. The Michigan Court of Appeals summarized the underlying facts:

The record reveals that on the evening of February 16, 1994, defendant shot and killed twenty-one-year-old Tyrone Williams while they and James Crain were driving in Williams' Pontiac Grand Am in Flint. Crain testified that before the shooting he overheard the defendant say that he could rob Williams. Without warning, defendant, who was riding in the back of the car, pulled out a gun and shot Williams in the head. After defendant climbed from the back of the vehicle to the driver's seat, Crain jumped out and defendant sped away. Within an hour, Crain called 911 from a relative's house and told the operator what had happened. Crain indicated that on a previous occasion, defendant shot in Williams' direction after an argument over stereo speakers.

Flint Detective Sergeant Thomas Korabik testified that while conducting an interview at the police station that evening, defendant stated that he and Williams had problems in the past and referred to the incident regarding the stereo speakers. Defendant further stated

Again, we cannot say that the Court of Appeals' application of *Strickland* was unreasonable. Although the testimony was not cumulative with respect to Scott's earlier shooting in the direction of Williams, there was sufficient evidence in the record, aside from this fact, to support a first degree murder conviction. As set forth supra, Part II.A., that evidence consisted of Scott's admission that he harbored ill feelings toward Williams, the officer's testimony regarding the earlier speaker dispute, the fact that Scott put a gun in his pocket before he was picked up by Williams, and the fact that he took Williams to a parking lot and shot him a second time. In light of this evidence, Scott is unable to show that counsel's error in following this line of questioning deprived him of a fair trial. Accordingly, Scott's claim of ineffective assistance of counsel fails.

### F.  Cumulative Error

Scott's final claim is that the cumulative effect of the errors detailed in his first five claims deprived him of a fair trial. The Michigan Court of Appeals rejected this claim because it found no errors in Scott's other claims. The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief. *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). In any event, we do not find that any errors, even when cumulated, denied Scott a fair trial. The Michigan court's decision was not contrary to, nor an unreasonable application of, federal law.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

have been easily contradicted by the physical evidence and Scott's own inconsistent statement.

## 2. Cross Examination of Crain

Scott also contends that his trial counsel's cross examination of Crain was a deficiency amounting to ineffective assistance of counsel. The questioning at issue went as follows:

Q:  In your presence, has he ever threatened Tyrone Williams?
A:  Yes.
Q:  When?
A:  About – about four months before that happened, he – you know, him and Tyrone exchanged words, as we was talking – me and somebody else was talking – Cortez shot his gun at Tyrone that day; shot at him, toward him, you know, shot toward him.
Q:  What was the argument over?
A:  I guess it was a kicker box they had previously argued over; a speaker box.
 . . .
Q:  Okay, you said that you saw Cortez take a shot at Tryone about four months prior?
A:  Yes.
Q:  You witnessed that?
A:  Yes.

The Michigan Court of Appeals noted that this line of questioning was "unwise," but nonetheless found that it did not meet the *Strickland* test for ineffective assistance of counsel. The court held that it was not prejudicial to Scott. The police officer who took Scott's statement had already testified that Scott told him about the stereo speaker dispute, although nothing was mentioned about Scott's shooting in the direction of Williams. The court also held that there was ample evidence, other than this testimony, to support a conviction of first degree murder.

that while riding in the Grand Am, he began thinking of the previous problems between the two, pulled out the gun, pointed it in the air, and said to Williams, "What's up now?" Defendant then lowered the gun and shot Williams in the head. Defendant explained that after Crain jumped out of the car, he continued to drive and threw the gun out of the car five houses down the road. Furthermore, defendant indicated that he had the gun in his right pants pocket before Williams picked him up that evening. Williams was found at a nearby school with gunshot wounds to the head and stomach. Blood and brain matter were discovered in the Grand Am.

*People v. Scott*, No. 182235, 1997 WL 33354441, at *2 (Mich.Ct.App. Jan. 21, 1997) (unpublished per curiam opinion) (footnote omitted). Scott was sentenced to life in prison without parole for the murder conviction, and a concurrent two year term for the firearm conviction. On direct appeal to the Michigan Court of Appeals, Scott raised the following claims[1]:

I.  There was insufficient evidence presented to convict appellant of first degree murder.

II. The prosecutor's argument shifted the burden of proof to appellant which constitutes prosecutor misconduct and reversible error.

III. Appellant was denied due process of law where the record fails to include the entire portion of the prosecutor's final argument.

IV.  The jury instructions were reversibly erroneous because the court did not distinguish between voluntary and involuntary manslaughter despite appellant's assertion of an accident defense.

---

[1] Claims I through III were raised by Scott through his counsel. Claims IV through VI were raised by Scott *in pro per*.

V.  Appellant was deprived of his constitutional right of effective assistance of trial counsel.

VI.  The cumulative effect of the errors justify reversal for a new trial.

The Court of Appeals affirmed Scott's convictions.  Scott filed a delayed application for leave to appeal with the Michigan Supreme Court.  The Michigan Supreme Court vacated the opinion of the Court of Appeals with respect to the transcript issue, finding that the Court of Appeals could not resolve some of Scott's claims where a portion of the transcript of the prosecutor's closing argument was missing, and remanded for further proceedings.  The Court directed that the Court of Appeals obtain a videotape or a complete transcript of the trial, or direct settlement of the record pursuant to M.C.R. 7.210(B)[2] before addressing the merits of Scott's claims of prosecutor misconduct and ineffective assistance of counsel.  As to all other claims, the Michigan

---

[2]M.C.R. 7.210(B)(2) provides:
(2) Transcript Unavailable. When a transcript of the proceedings in the trial court or tribunal cannot be obtained from the court reporter or recorder, the appellant shall file a settled statement of facts to serve as a substitute for the transcript.
(a) Within 14 days after filing the claim of appeal, the appellant shall file with the trial court or tribunal clerk, and serve on each appellee, a proposed statement of facts. The proposed statement of facts must concisely set forth the substance of the testimony, or the oral proceedings before the trial court or tribunal if no testimony was taken, in sufficient detail to inform the Court of Appeals of the nature of the controversy and of the proceedings in the trial court or tribunal.
(b) The appellant shall notice the proposed statement of facts for prompt settlement before the trial court or tribunal. An amendment or objection to the proposed statement of facts must be in writing, filed in the trial court or tribunal before the time set for settlement, and served on the appellant and any other appellee.
(c) The trial court or tribunal shall settle any controversy and certify a statement of facts as an accurate, fair, and complete statement of the proceedings before it.
(d) The statement of facts and the certifying order must be filed with the trial court or tribunal clerk and a copy of the certifying order must be filed with the Court of Appeals.

---

### E.  Ineffective Assistance of Counsel

Scott's fifth claim is that he was denied the effective assistance of trial counsel.  He advances two reasons:  1) his counsel's failure to request an instruction on involuntary manslaughter, and 2) his counsel's cross-examination of Crain, which brought out testimony that Scott and Williams had been involved in a prior dispute over stereo speakers, and that Scott had shot in Williams's direction during that prior dispute.  The test for determining whether counsel is constitutionally ineffective was set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under *Strickland*, a petitioner must first show that counsel's performance was deficient.  To do so, the petitioner must prove that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id*. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. *Id*.  This requires a showing that counsel's errors were so serious that they deprived petitioner of a fair trial. *Id*.

### 1.  Involuntary Manslaughter Instruction

The Michigan Court of Appeals determined that counsel's failure to request a jury instruction on involuntary manslaughter did not amount to a deficient performance because the evidence did not support a finding of involuntary manslaughter, and because counsel made a strategic decision to advance two other defense theories – intoxication and provocation.  Having reviewed the record, we cannot say that the Michigan Court of Appeals unreasonably applied the *Strickland* test.  As detailed above, there was insufficient evidence to support an accident theory.  That an accident theory was not necessarily inconsistent with the other two defenses does not mean, as Scott argues in his brief, that counsel was deficient for not requesting the instruction.  Counsel made a strategic decision to advance the two more plausible defense theories, rather than to present the jury with a different story of how the shooting took place, which could

A: Yes. The natural reflex and I jumped, but the gun had went off by then.

Scott argues that this evidence was sufficient to require an involuntary manslaughter instruction. He ignores, however, evidence that would prevent a reasonable jury from finding involuntary manslaughter. First, this statement differed from his responses during an informal interview, in which Scott said that he pulled out the gun, put it up in the air, said "What's up now?" and then lowered the gun and shot Williams. Further, the first gunshot wound was in the right side of Williams's head, above the right ear and slightly behind the temple. If Williams had turned around to face Scott, it is unlikely that the bullet would have entered at that point. Most importantly, Scott ignores the evidence that he left the scene of the first shooting, drove to a parking lot, pulled Williams out of the car, and shot him one more time. Even if a reasonable jury could have found that the first shot was an accident, no reasonable jury could have found that the second shot was accidental. When considering all the evidence presented at trial, it simply did not support an involuntary manslaughter instruction.

Moreover, even if Scott's claim was not procedurally defaulted, and even if the trial court erred as a matter of state law, that is not a sufficient basis for granting habeas relief. Although the Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, *see Beck v. Alabama*, 447 U.S. 625, 627 (1980), it has not so held in noncapital cases. To the contrary, the Sixth Circuit has held that failure to instruct on a lesser included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990). For all of these reasons, Scott is not entitled to habeas relief on this claim.

Supreme Court denied leave to appeal. *People v. Scott*, 575 N.W.2d 549 (Mich. 1998).

The appellate court found that the trial transcript omitted approximately eighteen minutes of the prosecutor's closing argument, and that no other transcript or videotape of the closing argument existed. It therefore directed the trial court to settle the record. On remand, the trial court held a hearing to determine what happened during the missing portion of the prosecutor's closing arguments. After reviewing the record of that hearing and the record on appeal, the Michigan Court of Appeals again affirmed Scott's convictions. The Michigan Supreme Court denied leave to appeal. Scott then filed a petition for writ of habeas corpus with the U.S. District Court for the Eastern District of Michigan, advancing the same claims he had made in the state courts. On March 8, 2001, the district court denied Scott's petition. This appeal followed.

## II.

We review the district court's legal conclusions de novo and its factual findings for clear error. *DeLisle v. Rivers*, 161 F.3d 370, 380 (6th Cir.1998). Scott filed his petition for federal habeas corpus relief on April 25, 2000. Thus, the 1996 amendments to 28 U.S.C. § 2254, embodied in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), are applicable to Scott's petition. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

The Supreme Court recently described the standard for reviewing state court decisions under the AEDPA as follows:

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied – the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to"

clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). With these standards in mind, we consider each of Scott's claims in turn.

### A.  Insufficiency of the Evidence

Scott's first argument is that there was insufficient evidence to convict him of first degree murder. Specifically, he contends that there was no evidence that the killing was premeditated and deliberate. In *Jackson v. Virginia*, the Court held that a petitioner is not entitled to habeas corpus relief based on insufficient evidence where, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. 307, 319 (1979); *Sanders v. Freeman*, 221 F.3d 846, 856 (6th Cir. 2000). This standard applies whether the evidence of guilt was direct or circumstantial. *See Spalla v. Foltz*, 788 F.2d 400, 402 (6th Cir. 1986).

Under Michigan law, first degree murder requires a showing by the prosecution that the defendant intentionally killed the victim, and that the act of killing was premeditated and deliberate. *People v. Schollaert*, 486 N.W.2d 312, 318 (1992). Here, both the Michigan Court of Appeals and the district court found that the evidence supported the conviction for first degree murder. Both courts relied on evidence that Scott had placed a gun in his pocket before Williams picked him up, the testimony of Crain that Scott and Williams had a prior dispute over stereo speakers, Scott's admission that he had ill feelings toward Williams, and evidence that Scott shot

resulting from the transcription error. Scott is therefore not entitled to habeas relief based on the transcription error.

### D.  Jury Instruction

Scott's fourth claim is that the trial court erred by not giving the jury an instruction on involuntary manslaughter. The trial court instructed the jury on first degree murder, second degree murder, and voluntary manslaughter. Scott did not request an involuntary manslaughter instruction at trial. The Michigan Court of Appeals denied relief on this claim based upon Scott's failure to request the instruction. Hence, this claim is procedurally defaulted unless Scott can show cause and prejudice, or show that denial of relief will result in a fundamental miscarriage of justice.

Scott argues that ineffective assistance of trial counsel provides the cause for his failure to request an involuntary manslaughter instruction. As the district court found, however, even if we assume that Scott can establish cause, he cannot demonstrate actual prejudice or a fundamental miscarriage of justice. There was not sufficient evidence for a jury to reach a verdict of involuntary manslaughter. The only theory that Scott now advances to support such a verdict is that the shooting was an accident. Scott points to his written statement, in question and answer form, to the police.

Q:  At one point while you were in the car, you pulled the gun from your pocket?
A:  Yes.
Q:  And held it in the air?
A:  Yes.
Q:  What did you say at that time?
A:  What was up between me and him.
Q:  Between you and Tyrone?
A:  Yes.
Q:  What did you do then?
A:  By that time, Terry had left out the car, jumped out the car. Tyrone had grabbed my hand and I squeezed the trigger and it went off.
Q:  Meaning the gun went off?

*Mayer* does not stand for the proposition, implicit in Scott's argument, that where a portion of a trial transcript is missing and unobtainable, and where a defendant makes a claim that could possibly implicate that portion of the transcript, a retrial is always necessary. Rather, the Sixth Circuit has held that federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice. *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986). In *Bransford*, the court considered whether the unavailability of transcripts of jury instructions was a *per se* violation of due process. The trial court in that case determined that the transcript of the instructions was irretrievably lost and was incapable of reconstruction. Bransford argued that he should be entitled to review the instructions for error. Although Bransford proffered no specific errors, his trial attorney recalled having made some objections to the instructions at trial. The court held that this situation did not present a *per se* violation of due process. Instead, a petitioner "must show prejudice resulting from the missing transcripts." *Id.* The court went on to note: "Although this court recognizes the difficulty in demonstrating prejudice where the transcripts are missing, petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal." *Id*. The court found insufficient Bransford's argument that errors are frequently found in jury instructions for felony murder trial, and his trial attorney's recollection that some unspecified objections were made.

Here, Scott offers nothing more than gross speculation of error in the missing portion of the transcript. He contends that the prosecutor might have made some improper comments. He also contends that his attorney might have objected to the one specific statement Scott identifies as improper. Yet, as discussed above, the transcript is complete following that one statement, and no objection was made to it. Further, the prosecutor could not recall any objections during closing arguments, and defense trial counsel did not dispute the prosecutor's account. Nor did defendant or his lawyer make any allegation of misconduct beyond the one in the rebuttal argument. Scott has not shown prejudice

Williams a second time in the stomach after leaving the scene of the first gunshot. Scott argues that there are possible alternative explanations for these occurrences, and that they do not necessarily show premeditation or deliberate killing. Under the *Jackson* standard, Scott's arguments in this regard are inapposite. A reasonable trier of fact could have drawn from the evidence described above the reasonable inference that Scott's decision to kill Williams was premeditated and that the act of killing was deliberate. Scott's insufficiency of the evidence claim therefore fails.

### B. Prosecutorial Misconduct

Scott's second claim is that the prosecutor improperly shifted the burden of proof at trial. He points to the prosecutor's statement during closing arguments that "there's no evidence of heat of the moment, heat of passion, of some sudden unexplainable impulse." Scott argues that this statement improperly placed the burden on Scott to show some evidence of a factor that would reduce the crime from first degree murder, rather than leaving the burden with the prosecutor to prove the elements of premeditation and deliberate killing beyond a reasonable doubt. The district court concluded that this claim was barred by procedural default and, alternatively, lacked merit.

The opinion of the Michigan Court of Appeals, the last reasoned opinion of the Michigan courts considering this claim, determined that Scott had waived the claim of error by failing to object at trial to the prosecutor's remarks. The court therefore considered only whether the remarks resulted in a miscarriage of justice or whether a cautionary instruction could not have cured any error, concluding:

> The record reveals that the prosecutor merely argued that defendant intended to kill in a cold-blooded, premeditated, and deliberate manner. Such an argument amounts to nothing more than discrediting the defense, which is proper. . . . Moreover, the trial court's instruction regarding the burden of proof cured any

possible prejudicial effect from the prosecutor's closing argument.

*Scott*, 1997 WL 33354441, at *3; *see also People v. Scott*, No. 182235, 1998 WL 1990436, at *1, n.1 (Mich. Ct. App. 1998) (on remand) (reaffirming prior finding that no comments could be construed as shifting the burden of proof, and that defendant had not objected to any comments made by the prosecutor). The district court, therefore, found that this claim was procedurally defaulted.

Scott contends that this was error because neither the Michigan Court of Appeals nor the district court had the benefit of a complete transcript of the closing arguments to determine whether Scott's counsel did, in fact, object to any statements made by the prosecutor. Yet, the statement at issue was made during the prosecutor's rebuttal, which was fully transcribed. The missing portion of the transcript covered the beginning of the prosecutor's first closing argument. Defense counsel clearly did not object at any time between the statement at issue and the conclusion of the arguments. In any event, the trial court held a hearing to determine what was said during closing arguments. The prosecutor reconstructed an outline of his argument from notes that he had maintained. The prosecutor was then asked whether the defense made any objections to his closing argument, to which he responded that he did not recall any objections during closing arguments. Although defense counsel was not specifically asked at the hearing whether he objected during the prosecution's closing argument, he did not refute the account given by the prosecutor.

It appears that Scott made no objection to the prosecutor's argument. Any contention that there might have been an objection is sheer speculation and is contrary to the testimony at the settlement of the record hearing, as well as the portion of the record that we do have. Scott does not argue that he can show cause and prejudice for his failure to object at trial, nor does he make a showing of actual innocence. Hence, this claim is procedurally defaulted. In any event, as the district

court noted, any prosecutorial misconduct in this statement was not so severe as to deprive Scott of a fair trial. Nor was any error such that the jury instructions could not cure it. The trial judge issued proper instructions on the burden of proof and instructed that anything the attorneys had said to the contrary was to be disregarded. Scott's prosecutorial misconduct claim is meritless.

### C. Transcription Error

Scott's third claim is that the failure to transcribe a significant portion of the closing argument denied him due process. Scott again notes that the missing portion of the transcript may conceal an objection he may have made to some improper statement by the prosecutor. Scott notes that his counsel could not remember exactly what was said during the closing arguments, and he was therefore left to the mercy of the prosecutor's notes and memory, which yielded nothing that would aid Scott in his appeal. Scott relies heavily on the Supreme Court's opinion in *Mayer v. Chicago*, 404 U.S. 189 (1971), to argue that due process requires that a defendant be given a reliable record of sufficient completeness to permit proper review of his claims. Yet, *Mayer* was a case in which there was an existing record, and the only question was whether an indigent defendant convicted of a nonfelony, rather than a felony, was entitled to the complete transcript where the defendant's grounds for appeal made out a colorable need for a complete transcript. The Court held that such a defendant must be afforded a "'record of sufficient completeness' to permit proper consideration of [his] claims." *Id.* at 194. The Court went on to acknowledge that a record of sufficient completeness did not necessarily require a verbatim transcript, so long as the state found other means of providing an adequate record, such as an agreed statement of facts, a full narrative statement based on a court reporter's notes or a judge's notes, or a bystander's bill of exceptions. *Id.* The Court placed the burden on the state, in that situation, to show that something less than a complete transcript would be sufficient.