(2008)
Vanessa Maria QUINTERO, Petitioner,
v.
James E. TILTON, Secretary, California Department of Corrections and Rehabilitation; Debra Jacquez, Warden, Central California Women's Facility, State of California Department of Corrections, Respondents.
No. CV 06-7985-CAS(RC).
United States District Court, C.D. California.
November 26, 2008.

JUDGMENT
CHRISTINA A. SNYDER, District Judge.
Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman,
IT IS ADJUDGED that the petition for writ of habeas corpus is denied and the action is dismissed with prejudice.

ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a de novo determination.
IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.
IT IS FURTHER ORDERED that the Clerk shall serve petitioner by United States Mail with copies of this Order, the Judgment and the Magistrate Judge's Report and Recommendation.

REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE
ROSALYN M. CHAPMAN, United States Magistrate Judge.
This Report and Recommendation is submitted to the Honorable Christina A. Snyder, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

BACKGROUND

I
On June 20, 2003, in Los Angeles County Superior Court case no. VA073626, a jury convicted petitioner Vanessa Maria Quintero of second degree robbery in violation of California Penal Code ("P.C.") § 211, and the jury also found petitioner personally used a firearm (handgun) in the commission of the robbery within the meaning of P.C. § 12022.53(b). Clerk's Transcript ("CT") 89-91. On August 11, 2003, the trial court sentenced petitioner to 13 years in state prison.[1] CT 93-95.
The petitioner appealed her conviction and sentence to the California Court of Appeal, CT 96, which affirmed the judgment in an unpublished opinion filed April 21, 2005. Lodgment nos. 10-12. On May 18, 2005, petitioner, proceeding through counsel, filed a petition for review in the California Supreme Court, which denied the petition on July 20, 2005. Lodgment nos. 17-18. On October 16, 2005, petitioner filed a petition for writ of certiorari in the United States Supreme Court, which denied the petition on December 12, 2005. Lodgment no. 19; Quintero v. California, 546 U.S. 1078, 126 S.Ct. 834, 163 L.Ed.2d 711 (2005).

II
The California Court of Appeal, in affirming petitioner's conviction, made the following factual findings underlying the offense and trial:[2] At about 10:15 p.m. on October 24, 2002, Lenia Solorzano (Solorzano) was walking home from work on Ludell Street in Bell Gardens. Two women were walking toward her on the sidewalk. The one in front was heavyset and was pushing a stroller. Petitioner, who was thinner, was walking behind the woman pushing the stroller.
Petitioner walked up to Solorzano and demanded her purse. When Solorzano did not give it to her, petitioner pointed a gun at Solorzano and again demanded her purse. Afraid, Solorzano gave the purse to her. Petitioner and the other woman then left. Solorzano went home, telephoned the police, told them what had happened and described petitioner.
On the following day, Bell Gardens Police Officer Eduardo Vasquez heard a description of the robbery suspect and believed it fit petitioner. He and Officer So went to petitioner's home and received permission to search it from petitioner's mother. In a cupboard under the oven, Officer So found Solorzano's cellular telephone. Officer Vasquez got Solorzano and took her to petitioner's home. Solorzano identified petitioner as the woman who robbed her. Petitioner was placed under arrest.
On May 6, 2003, Solorzano attended a lineup at the county jail. At that time, she again identified petitioner as the robber.

Defense:
Several hours before the robbery, Bell Gardens Police Officer Marc Cobian saw petitioner pushing a stroller down the street. A heavier woman was with her. Bell Gardens Police Detective Brendan Kirkpatrick obtained information for the prosecution in this case. Although he knew petitioner had been with another woman at the time of the robbery, he made no attempt to locate the other woman.
Dr. Edward Geiselman is an expert in human memory. He testified that during an emotionally-charged situation, a witness's memory can be affected. Where the witness is the victim of a crime in which a weapon is used, the victim tends to focus on the weapon, rather than the perpetrator's face, and is less likely to make an accurate identification of the perpetrator. Where there is more than one perpetrator, the victim's ability to identify a perpetrator decreases.
Dr. Geiselman additionally testified that a one-person show-up increases the probability that the victim will make an identification, correct or incorrect. Once the victim has made the identification, he or she is more likely to identify the same person in a subsequent lineup and at trial.

III
On December 15, 2006, petitioner filed her habeas corpus petition under 28 U.S.C. § 2254 and a supporting memorandum of points and authorities, and on February 9, 2007, respondent filed an answer to the petition. On April 12, 2007, petitioner filed her traverse.
On August 14, 2008, the Court issued sua sponte an Order to Show Cause why this action should not be dismissed as untimely, pursuant to Day v. McDonough, 547 U.S. 198, 209-10, 126 S.Ct. 1675, 1684, 164 L.Ed.2d 376 (2006), and in response thereto petitioner filed an opposing memorandum of points and authorities and the declaration of Mr. Needelman, with exhibits. On September 18, 2008, respondent filed an opposition to petitioner's response to the Order to Show Cause, and on September 30, 2008, petitioner filed her reply.
The pending habeas corpus petition raises the following claims:
Ground One"The decision of the California Court of Appeal that Petitioner's trial counsel did not adequately preserve her peremptory challenge to a retired security guard juror (hereafter `Juror No. 6') on the record was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" (Petition at 4);
Ground Two"If the record on appeal was insufficient to show that her trial counsel made a peremptory challenge, the California courts' refusal to engross a settled statement of a discussion between the trial court and the parties in the courthouse hallway, during which her trial counsel made the peremptory challenge, was contrary to clearly established federal law entitling Petitioner to meaningful appellate review when state law provides a right to appeal" (Petition at 4-5); and
Ground Three"The trial court's decision to exclude the testimony of a retired city police detective in support of Petitioner's defense of misidentification was contrary to clearly established federal law entitling Petitioner to present evidence relevant to her defense under the compulsory process and due process clauses of the Sixth and Fourteenth Amendments of the United States Constitution. The error had a substantial and injurious effect on the verdict and resulted in actual prejudice." (citations omitted). Petition at 5.

DISCUSSION

IV
The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "established a one-year period of limitations for federal habeas petitions filed by state prisoners," Bryant v. Arizona Attorney Gen., 499 F.3d 1056, 1059 (9th Cir.2007), as follows:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....
28 U.S.C. § 2244(d).
A state court criminal judgment becomes final when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 1076, 155 L.Ed.2d 88 (2003); see also Wixom v. Washington, 264 F.3d 894, 897 (9th Cir.2001) ("[U]nder [§ 2244(d)], a judgment becomes `final' in one of two wayseither by the conclusion of direct review by the highest court, including the United States Supreme Court, to review the judgment, or by the expiration of the time to seek such review, again from the highest court from which such direct review could be sought."), cert. denied, 534 U.S. 1143, 122 S.Ct. 1097, 151 L.Ed.2d 994 (2002); Trapp v. Spencer, 479 F.3d 53, 58 (1st Cir.2007) ("When the Supreme Court denied [petitioner's] petition for certiorari..., [petitioner's] conviction became final, and the AEDPA period of limitations began to run.").
The Supreme Court denied petitioner's application for a writ of certiorari on December 12, 2005, and that is the date on which petitioner's conviction became final. The AEDPA's statute of limitations began to run the next day, on December 13, 2005, and expired one year later on December 12, 2006. Yet, petitioner's habeas corpus petitioner was file stamped on December 15, 2006, and if this date is correct, the petition was filed three days late. However, in the Ninth Circuit, "`a complaint is filed when it is placed in the actual or constructive custody of the clerk [of court]....'" Ordonez v. Johnson, 254 F.3d 814, 816 (9th Cir.2001) (citations omitted); United States v. Dae Rim Fishery Co., Ltd., 794 F.2d 1392, 1395 (9th Cir. 1986); Loya v. Desert Sands Unified School Dist., 721 F.2d 279, 281 (9th Cir. 1983); see also Cintron v. Union Pac. R.R. Co., 813 F.2d 917, 920 (9th Cir.1987) ("The consensus is that `[p]apers and pleadings including the original complaint are considered filed when they are placed in the possession of the clerk of the court.' The possession of the papers by the clerk of the court may be actual or constructive." (citations omitted)). Here, the declaration of petitioner's counsel, Jeffrey A. Needelman, shows that he mailed the pending habeas corpus petition by United States express mail to the Clerk of the Court on December 11, 2006, and it was received at the Court on December 12, 2006, by a person identified as "K. Dinh." Declaration of Jeffrey A. Needelman ¶¶ 3-4, Exhs. C; Declaration of Jeffrey A. Needelman in Support of Reply ¶¶ 2-6. Since a "complaint [i]s constructively filed when ... first delivered ... to the [C]lerk [ of Court,]" Dae Rim Fishery Co., Ltd., 794 F.2d at 1395; Ordonez, 254 F.3d at 816; see also Cooper v. City of Ashland, 871 F.2d 104, 105 (9th Cir.1989) (per curiam) ("When papers are mailed to the clerk's office, filing is complete when the papers are received by the clerk."), the habeas corpus petition was "constructively filed" on December 12, 2006; thus, it is timely.

V
A federal court, in conducting habeas review, is limited to deciding whether a state court decision violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982). Federal habeas corpus relief "does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); McGuire, 502 U.S. at 67, 112 S.Ct. at 480; see also Dugger v. Adams, 489 U.S. 401, 409, 109 S.Ct. 1211, 1216-17, 103 L.Ed.2d 435 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."); Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."); Medley, 506 F.3d at 862 ("[A] federal court may not overturn a conviction simply because the state court misinterprets state law."); Williams v. Borg, 139 F.3d 737, 740 (9th Cir.) (Federal habeas relief is available "only for constitutional violation, not for abuse of discretion."), cert. denied, 525 U.S. 937, 119 S.Ct. 353, 142 L.Ed.2d 292 (1998).
Ground One does not raise a cognizable federal constitutional or statutory claim. Rather, Ground One claims that the California Court of Appeal unreasonably determined trial counsel did not adequately preserve petitioner's peremptory challenge to a retired security guard. However, the Supreme Court has "long recognized that peremptory challenges are not of constitutional dimension." Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988); United States v. Martinez-Salazar, 528 U.S. 304, 311, 120 S.Ct. 774, 779, 145 L.Ed.2d 792 (2000). Rather, "[t]hey are a means to achieve the end of an impartial jury[,]" and as long as the jury that sits is impartial, "the loss of a peremptory challenge [does not] constitute[ ] a violation of the constitutional right to an impartial jury." Ross, 487 U.S. at 88, 108 S.Ct. at 2278; see also Watson v. Camp, 848 F.2d 89, 92 (7th Cir.) (Denial of a peremptory challenge "simply does not violate the Constitution by casting doubt on the impartiality of an otherwise validly constituted jury."), cert. denied, 488 U.S. 863, 109 S.Ct. 164, 102 L.Ed.2d 134 (1988); Haywood v. Portuando, 288 F.Supp.2d 446, 461-63 (S.D.N.Y.2003) ("[E]ven if the trial court incorrectly denied [petitioner] a peremptory challenge, that denial did not violate the Constitution."). Here, Ground One does not claim petitioner was denied her right to an impartial jury[3] or any other federal right;[4] therefore, Ground One is not cognizable in this proceeding. Ross, 487 U.S. at 88, 108 S.Ct. at 2278.

VI
The AEDPA "circumscribes a federal habeas court's review of a state court decision." Lockyer v. Andrade, 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); Wiggins v. Smith, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). Specifically, the AEDPA provides:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).
The California Supreme Court reached the merits of petitioner's claims when it denied her petition for review without comment or citation to authority. Pinholster v. Ayers, 525 F.3d 742, 756 n. 11 (9th Cir.2008); Hunter v. Aispuro, 982 F.2d 344, 348 (9th Cir.1992), cert. denied, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); Medley v. Runnels, 506 F.3d 857, 862 (9th Cir.2007) (en banc), cert. denied, ___ U.S. ___, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, in addressing Ground Three, this Court will consider the reasoned opinion of the California Court of Appeal, which denied the claim on the merits. Butler v. Curry, 528 F.3d 624, 640 (9th Cir.2008); Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir.2008). However, since no state court has provided a reasoned decision addressing the merits of Ground Two, this Court must conduct "an independent review of the record" to determine whether the California Supreme Court's ultimate decision to deny Ground Two was contrary to, or an unreasonable application of, clearly established federal law. Pinholster, 525 F.3d at 756 n. 11; Medley, 506 F.3d at 863 n. 3.

VII
If state law provides a criminal defendant with a right to appeal, "the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." Evitts v. Lucey, 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985); Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (plurality). Thus, for instance, a criminal defendant has a due process right to a "record of sufficient completeness" to ensure meaningful appellate review. Draper v. Washington, 372 U.S. 487, 497, 83 S.Ct. 774, 780, 9 L.Ed.2d 899 (1963); Mayer v. City of Chicago, 404 U.S. 189, 194, 92 S.Ct. 410, 414, 30 L.Ed.2d 372 (1971); see also People of Territory of Guam v. Marquez, 963 F.2d 1311, 1315 (9th Cir.1992) ("As a matter of due process, an appellant is entitled to a `record of sufficient completeness' so that he or she can demonstrate that prejudicial error occurred during the trial." (citations and some internal quotation marks omitted)); Fahy v. Horn, 516 F.3d 169, 190 (3d Cir.2008) ("It is indisputably true that a criminal defendant has the right to an adequate review of his conviction, i.e., a sufficiently complete record.").
In Ground Two, petitioner claims the California courts' refusal to engross a settled statement[5] of a discussion in the courthouse hallway between the trial court and the parties during which defense counsel allegedly made a peremptory challenge to Juror no. 6 "was contrary to clearly established federal law entitling Petitioner to meaningful appellate review when state law provides a right to appeal."[6] Petition at 4-5. There is no merit to this claim.
"[I]n a federal habeas corpus case brought by a state prisoner, the absence of a perfect transcript does not violate due process absent a showing of specific prejudice." White v. State of Fla., Dep't of Corrs., 939 F.2d 912, 914 (11th Cir.1991), cert. denied, 503 U.S. 910, 112 S.Ct. 1274, 117 L.Ed.2d 500 (1992); Mitchell v. Wyrick, 698 F.2d 940, 941-42 (8th Cir.), cert. denied, 462 U.S. 1135, 103 S.Ct. 3120, 77 L.Ed.2d 1373 (1983); see also Scott v. Elo, 302 F.3d 598, 604 (6th Cir.2002) ("[F]ederal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice."), cert. denied, 537 U.S. 1192, 123 S.Ct. 1272, 154 L.Ed.2d 1026 (2003). Here, petitioner simply has not shown she was prejudiced by the California courts' refusal to allow a settled statement to augment the trial record. Coleman v. Hickman, 270 Fed.Appx. 629, 631 (9th Cir.2008);[7]Scott, 302 F.3d at 605; see also White, 939 F.2d at 914 ("[S]ince [petitioner] has failed to demonstrate how the defective suppression hearing transcript prejudiced his direct appeal, he is entitled to no relief on this claim."). To the contrary, as discussed above, petitioner's claim that she was denied a peremptory challenge, without more, does not state a cognizable federal claim. See Mitchell, 698 F.2d at 941-42 ("Mere absence of a perfect transcript does not necessarily deny one due process of law.... [A] constitutional violation [also] needs to be asserted."). Nor did petitioner have any right under California law to exercise a peremptory challenge since the jury had already been sworn before the issue arose. People v. Cottle, 39 Cal.4th 246, 255-59, 46 Cal.Rptr.3d 86, 90-93, 138 P.3d 230 (2006); C.C.P. § 226(a). Further, petitioner has not shown the record presented to the California Court of Appeal was insufficient for that court to evaluate petitioner's claims. See Lodgment no. 12. Finally, following an off-the-record conversation, the trial court provided defense counsel the opportunity to make a record, and defense counsel failed to do so.[8]See Griffin, 33 Cal.4th at 554 n. 4, 15 Cal.Rptr.3d at 755 n. 4, 93 P.3d 344 ("If the record on appeal is inadequate, it is defendant who is responsible, inasmuch as he failed to include in the oral proceedings at trial the information that he improperly sought to insert through a settled statement."); People v. Tuilaepa, 4 Cal.4th 569, 585, 15 Cal.Rptr.2d 382, 391, 842 P.2d 1142 (1992) ("The settlement, augmentation, and correction process does not allow parties to create proceedings, make records, or litigate issues which they neglected to pursue earlier."), affirmed by, Tuilaepa v. California, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). For all these reasons, the California Supreme Court's denial of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law.

VIII
Although a criminal defendant has the due process right to present a defense, Taylor v. Illinois, 484 U.S. 400, 408, 108 S.Ct. 646, 652, 98 L.Ed.2d 798 (1988); Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), that does not mean "a defendant must be allowed to put on any evidence he chooses." LaGrand v. Stewart, 133 F.3d 1253, 1266 (9th Cir.), cert. denied, 525 U.S. 971, 119 S.Ct. 422, 142 L.Ed.2d 343 (1998). Rather, the defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Chambers, 410 U.S. at 302, 93 S.Ct. at 1049; Crane v. Kentucky, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). Thus, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor, 484 U.S. at 410, 108 S.Ct. at 653; Perry v. Rushen, 713 F.2d 1447, 1450 (9th Cir.1983), cert. denied, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). Indeed, "any number of familiar and unquestionably constitutional evidentiary rules authorize the exclusion of relevant evidence[,]" Montana v. Egelhoff 518 U.S. 37, 42, 116 S.Ct. 2013, 2017, 135 L.Ed.2d 361 (1996) (plurality opinion); LaGrand, 133 F.3d at 1266-67, and states have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not `arbitrary' or `disproportionate to the purposes they are designed to serve.'" United States v. Scheffer, 523 U.S. 303, 308, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998) (citations omitted); Greene v. Lambert, 288 F.3d 1081, 1090 (9th Cir.2002). Nevertheless, the exclusion of evidence that is highly reliable and relevant to the defense may violate due process. Green v. Georgia, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151-52, 60 L.Ed.2d 738 (1979) (per curiam); Chambers, 410 U.S. at 300-302, 93 S.Ct. at 1048-49.
In Ground Three, petitioner claims the trial court violated her constitutional rights under the compulsory process and due process clauses to present vital defense evidence by excluding an expert witness to testify "in support of [her] defense of misidentification...." Petition at 5. There is no merit to this claim.
The California Court of Appeal, in denying Ground Three, succinctly set forth the facts underlying this claim, as follows:
Defense counsel sought to introduce the testimony of Burt Luper (Luper), a private investigator who was a retired Los Angeles Police Department robberyhomicide detective. Luper would have testified that he had read the reports in this case and, as a reasonable detective, he would have tried to locate the woman who was with [petitioner] at the time of the crime. He had tried to locate her and found a number of people with her name in Bell Gardens. The People objected to the proffered testimony. [¶] The trial court ruled that it would not allow the testimony. It had no offer of proof as to whether Luper knew "what the Bell Gardens Police Department should or should not have done under the circumstances. [¶] There are over 80 cities in Los Angeles County. A good number of those do not use the county sheriffs but have their police department. Their training and resources are different, and to have someone testify as based on his experience what he would have done under the circumstances as opposed to what Bell Gardens did or did not do under the circumstances, I think is confusing. I think it is not relevant. I think it is expert testimony which is unreliable under the circumstances of the facts of this case."
Lodgment no. 12 at 11. The Court of Appeal then denied petitioner's claim, holding "[t]he trial court did not abuse its discretion in excluding the expert witness testimony." Lodgment no. 12 at 4, 12. Specifically, the Court of Appeal held:
"A witness is qualified to testify as an expert if the witness has special knowledge, skill, experience, or education pertaining to the matter on which the testimony is offered." Expert opinion testimony is admissible if the subject matter of the testimony is "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." Such testimony must be "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates...." In reviewing the trial court's ruling allowing or disallowing expert testimony, the question before us is whether the ruling constituted an abuse of discretion. [¶] Here, [petitioner's] offer of proof was that Luper would testify as to what he would have done if he were investigating the case. [Petitioner] did not establish that Luper was qualified to testify as to what the Bell Gardens Police Department should have done, or that its investigation was in any way deficient. [Petitioner] made no offer of proof as to what special qualifications Luper might have had other than the fact he was a retired police officer. Moreover, [petitioner] was able to elicit testimony suggesting that [petitioner] may have been the woman pushing the stroller, not the robber, and that the Bell Gardens Police Department made no effort to find [petitioner's] companion. Under these circumstances, the trial court did not abuse its discretion in refusing to allow Luper to testify as an expert, and [petitioner] was not in any way prejudiced by the exclusion of his testimony.
Lodgment no. 12 at 11-12 (citations and footnote omitted).
The Supreme Court has never held that "an exercise of discretion to exclude expert testimony violate[s] a criminal defendant's constitutional right to present relevant evidence." Moses v. Payne, 543 F.3d 1090, 1103 (9th Cir.). "Because the Supreme Court has not directly considered this issue, the state appellate court's determination that the trial court's exercise of discretion to exclude expert testimony ... did not violate [petitioner's] rights cannot be contrary to or an unreasonable application of clearly established Supreme Court precedent."[9]Id.; Wright v. Van Patten, ___ U.S. ___, 128 S.Ct. 743, 746-47, 169 L.Ed.2d 583 (2008); Carey v. Musladin, 549 U.S. 70, 76-77, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006); see also Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir.2007) ("Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law."), cert. denied, ___ U.S. ___, 129 S.Ct. 247, 172 L.Ed.2d 188, 2008 WL 2785666 (U.S.).
Thus, the California Supreme Court's denial of Ground Three was neither contrary to, nor an unreasonable application of, clearly established federal law.

RECOMMENDATION
IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.
NOTES
[1] On November 26, 2003, petitioner filed in the trial court an application for permission to prepare a settled statement, which the trial court denied without prejudice on December 19, 2003. Lodgment no. 2; Lodgment no. 5 at 1:14-16:27. On January 12, 2004, petitioner filed a renewed application for permission to prepare a settled statement, which the trial court denied on February 2, 2004. Lodgment no. 3; Lodgment no. 4, Exh. E. Petitioner then filed a motion for reconsideration, which the trial court denied on March 19, 2004. Lodgment no. 4; Lodgment no. 5 at 17:10-23:9. Petitioner next filed a writ of mandate in the California Court of Appeal, seeking an order requiring the trial court to engross a settled statement, which the appellate court denied on April 21, 2004. Lodgment nos. 6-7. Petitioner then filed a petition for review in the California Supreme Court, which denied the petition on June 9, 2004. Lodgment nos. 8-9.
[2] Lodgment no. 12 at 2-3.
[3] In her reply, petitioner attempts to recharacterize Ground One as a claim for "a fair and impartial jury" and a due process claim based on the arbitrary application of state law, see Reply at 1-7; however, "[a] Traverse [reply] is not the proper pleading to raise additional grounds for relief." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir.1994), cert. denied, 514 U.S. 1026, 115 S.Ct. 1378, 131 L.Ed.2d 232 (1995).
[4] In her petition, petitioner cites 28 U.S.C. § 2254(d)(2) and Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) to support her argument that the California Court of Appeal's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Petition at 4. As respondent aptly notes, however, petitioner does not take the next step and relate this allegedly unreasonable determination to the deprivation of a federal right. Cf. Green v. LaMarque, 532 F.3d 1028, 1030-33 (9th Cir.2008) (addressing claim that trial court unreasonably determined facts in regard to petitioner's claim that prosecutor exercised peremptory challenges in a racially discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)); Lambert v. Blodgett, 393 F.3d 943, 972-73 (9th Cir.2004) (addressing claim that state courts unreasonably determined facts in regard to petitioner's claims that he did not knowingly, voluntarily and intelligently plead guilty and he received ineffective assistance of counsel), cert. denied, 546 U.S. 963, 126 S.Ct. 484, 163 L.Ed.2d 368 (2005); Taylor v. Maddox, 366 F.3d 992, 998-1018 (9th Cir.) (addressing claim that trial court unreasonably determined facts in regard to petitioner's claim that his confession was coerced and obtained in violation of Miranda and Edwards v. Arizona), cert. denied, 543 U.S. 1038, 125 S.Ct. 809, 160 L.Ed.2d 605 (2004). Therefore, this claim is not cognizable in this proceeding.
[5] Under California law, "[a] settled statement operates to make up for the absence of a reporter's transcript of oral proceedings, and not to supply what was omitted from those proceedings." People v. Griffin, 33 Cal.4th 536, 554 n. 4, 15 Cal.Rptr.3d 743, 755 n. 4, 93 P.3d 344 (2004) (citations omitted).
[6] To the extent Ground Two challenges the California courts' violation of state law in failing to allow petitioner to prepare a settled statement, such claim is not cognizable in this proceeding. McGuire, 502 U.S. at 67-68, 112 S.Ct. at 480; Harris, 465 U.S. at 41, 104 S.Ct. at 875.
[7] See Fed. R.App. P. 32.1(a); Ninth Circuit Rule 36-3(b).
[8] Specifically, the trial court told defense counsel "Okay. I'm going to keep him on the jury ... over your objection, and if you would like to make a record now, this would be the appropriate time[,]" and defense counsel responded "Okay. I will object to that ruling. Thank you, Your Honor." RT 113:8-15.
[9] Prior to Moses, the Ninth Circuit had held that in evaluating a state habeas petitioner's challenge to the exclusion of evidence, the following balancing test applied to determine whether due process was violated:

In weighing the importance of evidence offered by a defendant against the state's interest in exclusion, the court should consider the probative value of the evidence on the central issue; its reliability; whether it is capable of evaluation by the trier of fact; whether it is the sole evidence on the issue or merely cumulative; and whether it constitutes a major part of the attempted defense. A court must also consider the purpose of the rule; its importance; how well the rule implements its purpose; and how well the purpose applies to the case at hand. The court must give due weight to the substantial state interest in preserving orderly trials, in judicial efficiency, and in excluding unreliable or prejudicial evidence.
Miller v. Stagner, 757 F.2d 988, 994-95 (9th Cir.1985) (citation omitted), amended by, Miller v. Stagner, 768 F.2d 1090 (9th Cir.1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1269, 89 L.Ed.2d 577 (1986) and cert. denied, 475 U.S. 1049, 106 S.Ct. 1271, 89 L.Ed.2d 579 (1986); Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir.2003). This was true even for post-AEPA habeas cases. Chia v. Cambra, 360 F.3d 997, 1003-04 (9th Cir.2004), cert. denied, 544 U.S. 919, 125 S.Ct. 1637, 161 L.Ed.2d 476 (2005). In any event, even if this Court were to apply the balancing test here, petitioner's claim would fail since defendant's offer of proof was that Luper would testify that a reasonable police officer would have attempted to find the woman who was with petitioner when the robbery occurred. RT 327:25-332:14. Such testimony, however, was, at best, not particularly probative, especially since the jury heard: there was another woman with petitioner when she robbed the victim, see, e.g., RT 133:6-138:21, 149:4-159:2; the police did not attempt to find the other woman, RT 264:19-265:21, 267:9-24; and Dr. Geiselman testified as an expert witness in eyewitness identification and human memory, stating, among other things, that a victim's ability to identify a perpetrator decreases when there is more than one individual involved and the victim tends to assign the central role in the crime to whomever the victim identifies. RT 285:21-302:20.