David K. ROSS, Jr., aka David Kelvin Ross, Jr., Petitioner

v.

T. FELKER, Warden, Respondent.

Case No. CV 07–0390–MMM(RC).

United States District Court, C.D. California.

Oct. 30, 2009.

David K. Ross, Jr., Eloy, AZ, pro se.

Bradley A. Weinreb, CAAG Office of Attorney General of California, San Diego, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

MARGARET M. MORROW, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Margaret M. Morrow, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On March 19, 2004, in Riverside County Superior Court case no. SWF001420, a jury convicted petitioner David K. Ross, Jr., aka David Kelvin Ross, Jr., of one count of attempted unpremeditated murder in violation of California Penal Code ("P.C.") §§ 664/187 (count 1), one count of shooting at an occupied vehicle in violation of P.C. § 246 (count 2), one count of possession of a loaded firearm in a vehicle in violation of P.C. § 12031(a)(1) (count 4), one count of possession of a concealed firearm in a vehicle in violation of P.C. § 12025(a)(1) (count 5), and one count of providing false information to a peace officer in violation of P.C. § 148.9(a) (count 7); as to count 1, the jury found petitioner personally discharged a firearm in commission of the offense within the meaning of P.C. § 12022.53(c); and, as to counts 1 and 2, the jury found petitioner personally

used a firearm in the commission of the offense within the meaning of P.C. § 12022.5(a)(1).[1] Clerk's Transcript ("CT") 99–107, 185–87. On April 30, 2004, petitioner was sentenced to the total term of 27 years in state prison. CT 207–10.

The petitioner appealed his convictions and sentence to the California Court of Appeal, CT 212, which affirmed the judgment in an unpublished opinion filed August 11, 2005, 2005 WL 1907245. Lodgment nos. 2–5. On September 7, 2005, petitioner, proceeding through counsel, filed a petition for review in the California Supreme Court, which denied the petition on October 19, 2005. Lodgment nos. 8–9.

On August 15, 2005, before petitioner's judgment became final, petitioner, proceeding pro se, filed a habeas corpus petition in the California Court of Appeal, which denied the petition on September 6, 2005. Lodgment nos. 6–7. On September 26, 2005, petitioner filed a petition for habeas corpus relief in the California Supreme Court, which denied the petition on July 19, 2006. Lodgment nos. 10–11.

On July 31, 2006, petitioner filed a habeas corpus petition in the Riverside County Superior Court, which denied the petition on August 10, 2006. Lodgment nos. 12–13. On August 21, 2006, petitioner filed a second habeas corpus petition in the California Supreme Court,[2] which denied the petition on March 14, 2007, with citation to *In re Clark*, 5 Cal.4th 750, 21 Cal.Rptr.2d 509, 855 P.2d 729 (1993). Opposition, Exh. A.

## II

The California Court of Appeal, in affirming petitioner's judgment, made the following findings of facts:[3] Darrell Harris was acquainted with petitioner and co-defendant, Rocco Caccavari. In the evening of October 22, 2002, Harris, who knew petitioner was looking for him, encountered petitioner in an alley off of Latham Street in Hemet, California. Harris and petitioner argued over money that Harris owed petitioner. After the argument ended, petitioner called for codefendant Caccavari, who was further down the alley inside his Jeep. Once Caccavari drove-up, petitioner opened the passenger door, then turned around and pulled out a gun. Petitioner pointed it at Harris and pulled the trigger, but the gun did not fire. Petitioner then got into the backseat, and the Jeep began to drive away and out of the alley.

Caccavari's Jeep then turned around and sped back toward Harris, who was inside his own vehicle and who was following the Jeep out of the alley. As the cars approached, Harris saw muzzle flashes from the gun. Harris did not know whether petitioner pointed the gun at Harris, but he knew it was fired in his general direction. Harris neither saw petitioner place a clip into the gun nor rack it before pulling the trigger. He was also unaware if the gun was loaded. Harris, who was not hit, hastily sped away.

Witness Wildredo Padilla was in the doorway to his house looking out onto the alley when he saw the Jeep and Harris's red car. Padilla observed the Jeep exit the alley and then make a U-turn back towards Harris's car. As Padilla turned, he heard gun shots. Padilla took cover in the doorway, noticing the driver of the red car ducking and trying to steer the car.

Hemet Police Detective Frank Pitette stopped the Jeep a few blocks from the

---

1. Petitioner was tried with codefendant Rocco Anthony Caccavari, who was convicted "of (Health & Safety Code, § 11550) (count 3) and misdemeanor driving while under the influence of a drug (Veh.Code, § 23152) (count 6)." Lodgment no. 5 at 2 n. 2.

2. In this petition to the California Supreme Court, petitioner raised Grounds Five and Six of the pending petition.

3. Lodgment no. 5 at 3–5.

alley, and petitioner denied any knowledge of the shooting. Petitioner, however, provided a false name to the officer. A .25 caliber Beretta was found on petitioner's person, with a bullet chambered and the hammer cocked and ready to fire.

Hemet Police Officer Donald Gardner investigated the scene around 6:40 p.m. on the night of the shooting. He found an expended bullet and four casings in the area. The casings matched petitioner's gun. He found no bullet damage on the exterior of the buildings in the vicinity. Padilla later discovered a waist-high "puncture" in a stucco wall that had not been there before the shooting.

Petitioner claimed there was no ammunition in the gun when he pointed it at Harris and that he then loaded the weapon but only fired it into the air. He presented two witnesses who were with him on the evening of the incident, who testified petitioner only fired the gun into the air and not at Harris's car.

Petitioner also testified and admitted he initially "dry fired" the gun without the clip at Harris's chest to scare Harris and to get him to pay his drug money. He also stated that once he got into the Jeep, he told Caccavari to turn around after they exited the alley because the Jeep was driving in the wrong direction. He then saw Harris leaving the alley; believing that Harris was following them, he grabbed the clip to his gun, put it into the gun, and cocked the hammer. Petitioner claimed that, as the cars passed each other, he fired a round into the ground and then continued to fire several times, but only into the air. Petitioner feared that Harris might have had a gun but admitted that he did not see a gun on Harris. Petitioner also admitted that out of fear he lied to the police about his identity and about the shooting.

## III

On April 4, 2007, petitioner, proceeding pro se, filed the pending habeas corpus petition under 28 U.S.C. § 2254, and on May 22, 2007, respondent filed a motion to dismiss the petition, arguing it is a "mixed" petition containing both exhausted and unexhausted claims. On July 24, 2007, this Court denied the motion to dismiss, and on August 21, 2007, respondent filed an answer. The petitioner filed a reply on October 1, 2007.

The petitioner raises the following claims:

Ground One—"The trial court[ ] fail[ed] to require the People to elect which assualt [sic] constituted the charged count of att[empted] murd[er] in violation of petitioner[']s right to due process" (Petition at 5);

Ground Two—"The trial court imposed an unlawful and illegal sentence enhancement" in violation of petitioner's Fifth, Sixth and Fourteen Amendment rights (*Id.*);

Ground Three—"The imposition of Penal Code § 12022.53(c) violates petitioner[']s [right against] double jeopardy" under the Fifth Amendment (Petition at 6);

Ground Four—"Ineffective assistance of appeal [sic] counsel [in violation of] 6th Amend[ment] right[s]" in that "counsel on appeal failed to raise": (a) "irregularty [sic] of the enhancements and the insufficiency of the evidence to support"; (b) "sufficiency of the evidence to convict"; (c) "prosecutor[ial] misconduct"; (d) "reasons for imposing enh[ancement] by judge"; and (e) "failure to argue any caselaw [sic] as to the jury not being fully instructed or not being instructed at all as to which enhancement could have been properly found true." (Petition at 6–6a);[4]

4. Page 6a is the unnumbered page following page 6.

Ground Five—"Ineffective assistance of trial counsel" in violation of petitioner's Sixth Amendment right in that trial counsel failed: (a) "to object to prosecutor[']s misstatements of the evidence during closing argument" and (b) "refused to have charges droped [sic] when prosecutor sought to have charges droped [sic] ... [in] counts IV and V, which are both felonies" (*Id.*); and

Ground Six—"Denial of expert witness for [petitioner's] defense. Right to have compulsory process for obtaining witnesses" in violation of petitioner's Fifth, Sixth and Fourteenth Amendment rights. (Petition at 6a).

## DISCUSSION

### IV

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 2553, 115 L.Ed.2d 640 (1991); *Lee v. Kemna,* 534 U.S. 362, 375, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002); *King v. LaMarque,* 464 F.3d 963, 965 (9th Cir.2006). "[T]he procedural default doctrine is a specific application of the general adequate and independent state grounds doctrine." *Wells v. Maass,* 28 F.3d 1005, 1008 (9th Cir.1994); *Fields v. Calderon,* 125 F.3d 757, 761–62 (9th Cir.1997), *cert. denied,* 523 U.S. 1132, 118 S.Ct. 1826, 140 L.Ed.2d 962 (1998). The procedural default doctrine "bar[s] federal habeas [review] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman,* 501 U.S. at 729–30, 111 S.Ct. at 2554; *Hanson v. Mahoney,* 433 F.3d 1107, 1113 (9th Cir.), *cert. denied,* 547 U.S. 1180, 126 S.Ct. 2354, 165 L.Ed.2d 282 (2006). A state procedural rule is consid-

ered an independent bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling. *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985); *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983); *LaCrosse v. Kernan,* 244 F.3d 702, 704 (9th Cir.2001). A state procedural rule constitutes an adequate bar to federal court review if it was "firmly established and regularly followed" at the time the state court applied it. *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991); *King,* 464 F.3d at 965; *see also Townsend v. Knowles,* 562 F.3d 1200, 1207 (9th Cir.2009) ("To be adequate, a state procedural rule must be 'well-established and consistently applied.' " (quoting *Bennett v. Mueller,* 322 F.3d 573, 583 (9th Cir.), *cert. denied,* 540 U.S. 938, 124 S.Ct. 105, 157 L.Ed.2d 251 (2003)). "A state ground is independent and adequate only if the last state court to which the petitioner presented the claim 'actually relied' on a state rule that was sufficient to justify the decision." *Carter v. Giurbino,* 385 F.3d 1194, 1197 (9th Cir.2004), *cert. denied,* 543 U.S. 1190, 125 S.Ct. 1406, 161 L.Ed.2d 196 (2005); *Koerner v. Grigas,* 328 F.3d 1039, 1049–50 (9th Cir.2003). However, "[a] procedural rule can be neither well-established nor consistently applied if it is not 'clear and certain.' " *Townsend,* 562 F.3d at 1207 (quoting *King,* 464 F.3d at 965)). Moreover, "[t]o constitute a procedural bar, the state's rule had to be independent and adequate at the time [petitioner] purportedly failed to comply with it." *Townsend,* 562 F.3d at 1206; *Fields,* 125 F.3d at 760.

Procedural default is an affirmative defense, *Gray v. Netherland,* 518 U.S. 152, 165–66, 116 S.Ct. 2074, 2082, 135 L.Ed.2d 457 (1996); *Insyxiengmay v. Morgan,* 403 F.3d 657, 665 (9th Cir.2005), "and the state

has the burden of showing that the default constitutes an adequate and independent ground." *Insyxiengmay,* 403 F.3d at 665–66; *Bennett,* 322 F.3d at 585. Here, respondent raises the affirmative defense that Grounds Five and Six are procedurally barred due to the California Supreme Court's denial of petitioner's habeas corpus petition raising those claims with citation to *In re Clark.*

■ A citation to *In re Clark* generally "bars habeas corpus petitions that are filed after 'substantial delay.'" *King,* 464 F.3d at 966; *Townsend,* 562 F.3d at 1207. "A habeas petitioner in California must justify any 'significant' or 'substantial' delay in seeking habeas corpus relief." *King,* 464 F.3d at 966; *Townsend,* 562 F.3d at 1207. The Ninth Circuit "has recognized that California's timeliness rule became independent of federal law in 1998, so [this Court] need only consider whether the California timeliness rule was adequate as of [2007]." *Townsend,* 562 F.3d at 1206–07 (citation omitted); *Bennett,* 322 F.3d at 582–83.

Here, respondent has properly raised a *Clark* procedural bar as an affirmative defense to Grounds Five and Six. Answer at 17:3–14, 19:16–21. This means that:

> . . . "the burden to place that defense in issue shifts to the petitioner." The petitioner "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." The burden then shifts back to the government, and it bears "the ultimate burden of proving the adequacy" of the relied upon ground.

*King,* 464 F.3d at 966–67 (quoting *Bennett,* 322 F.3d at 585–86). "In most circumstances, the best method for petitioners to place the defense in issue is to assert 'specific factual allegations that demonstrate the inadequacy of the state proce-

dure' by citing relevant cases." *King,* 464 F.3d at 967; *Bennett,* 322 F.3d at 586. If, however, a state procedural rule has previously been found inadequate, "petitioners may fulfill their burden under *Bennett* by simply challenging the adequacy of the procedure; the burden then shifts back to the government to demonstrate that the law has subsequently become adequate." *King,* 464 F.3d at 967.

■ Here, petitioner claims California's timeliness rule under *Clark* is "not 'adequate'" because it "was not firmly established and regularly followed at the time petitioner allegedly defaulted herein, nor has respondent carried its burden of pleading and proving such a procedural default in this Court." Traverse at 2. Since the Ninth Circuit has previously found California's timeliness rule inadequate, *King,* 464 F.3d at 966–68; *Morales v. Calderon,* 85 F.3d 1387, 1391 (9th Cir.), *cert. denied,* 519 U.S. 1001, 117 S.Ct. 500, 136 L.Ed.2d 391 (1996), petitioner's challenge to the rule's adequacy is sufficient to meet his burden under *Bennett. King,* 464 F.3d at 968. The burden therefore shifts back to respondent to prove the adequacy of the *Clark* rule. *King,* 464 F.3d at 967; *Bennett,* 322 F.3d at 585–86. "Because the [respondent] offers no evidence that California operated under clear standards for determining what constituted 'substantial delay' in [2007], [he] failed to meet [his] burden of proving that California's timeliness bar was sufficiently clear and certain to be an adequate state bar." *Townsend,* 562 F.3d at 1208. Therefore, respondent has not shown Grounds Five and Six are procedurally defaulted, and the Court will address the merits of these claims.

**V**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a

state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AED-PA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court reached the merits of Grounds One through Four when it denied petitioner's requests for review and first habeas corpus petition without comment or citation to authority. *Gaston v. Palmer,* 417 F.3d 1030, 1038 (9th Cir.2005), *amended by,* 447 F.3d 1165 (9th Cir.2006), *cert. denied,* 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir.1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim

rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Medley v. Runnels,* 506 F.3d 857, 862 (9th Cir.2007) (en banc), *cert. denied,* —— U.S. ——, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Here, the California Court of Appeal issued a reasoned decision addressing only Ground One, and, as to that claim, this Court will consider the reasoned opinion of the California Court of Appeal. *Mendez v. Knowles,* 556 F.3d 757, 767 (9th Cir.2009); *Butler v. Curry,* 528 F.3d 624, 640 (9th Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 767, 172 L.Ed.2d 763 (2008). As to Grounds Two through Six,[5] however, this Court must conduct an independent review of the record. *Gonzalez v. Knowles,* 515 F.3d 1006, 1014 (9th Cir. 2008); *Medley,* 506 F.3d at 863 n. 3.

## VI

■ "[A] state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict." *Schad v. Arizona,* 501 U.S. 624, 634–35 n. 5, 111 S.Ct. 2491, 2498 n. 5, 115 L.Ed.2d 555 (1991) (plurality opinion); *Johnson v. Louisiana,* 406 U.S. 356, 359–63, 92 S.Ct. 1620, 1623–25, 32 L.Ed.2d 152 (1972). However, the due process clause protects against the "arbitrary deprivation" of a liberty interest to which a defendant is "entitled under state law[,]" *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980); *Laboa v. Calderon,* 224 F.3d 972, 979 (9th Cir.2000), and under California law, a jury verdict in a criminal case must be unanimous. Cal. Const., Art. I, § 16; *People v. Collins,* 17 Cal.3d 687, 693, 131 Cal.Rptr. 782, 785–86, 552 P.2d 742 (1976), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977).

---

**5.** Although the California Supreme Court did not address the merits of Grounds Five and

Six, the Riverside County Superior Court denied those claims on the merits.

■ In Ground One, petitioner claims the trial court's "failure to require the People to elect which assualt [sic] constituted the charged count of att[empted] murd[er]" violated his due process right to a unanimous jury as well as to be apprised of the charges against him.[6] Petition at 5. There is no merit to this claim.

The California Court of Appeal, in affirming petitioner's criminal conviction, set forth the facts underlying petitioner's claim, as follows:

> Prior to trial, ..., [petitioner's] counsel requested that the People elect which act or acts with the gun constituted the attempted murder charge, in addition to a unanimity instruction (CALJIC No. 17.01). Counsel noted that there were two assaults (the initial pointing and "dry firing" of the weapon at Harris and the subsequent firing of the weapon at Harris's vehicle), either one of which the jurors might conclude was attempted murder. The People responded that there was one attempted murder and that the two actions were one continuing course of conduct. Following further discussion on the matter, the court reserved ruling until presentation of evidence. [¶] After the first witness, Padilla, testified, [petitioner's] counsel again requested that the People be required to make an election as to which act or acts constituted the attempted murder charge. The court again observed that the decision was "somewhat evidence dependent" and ruled that "no election is required at this point, but I'm leaving open the possibility that I may, depending on what the evidence shows." Relying on the continuous course of conduct exception contained in *People v. Sanchez* (2001) 94 Cal.App.4th 622 [114 Cal. Rptr.2d 437], the court explained, "My

ruling is based on my understanding of the evidence, and my belief that it is not a criminal act, but rather a criminal event that was somewhat unbroken...." Based on the offer of proof, the court concluded the continuous course of conduct exception applied in that the criminal acts were so closely connected as to form a single transaction and that the multiple acts constituted one discrete event. The court, however, noted that if the evidence showed otherwise, it would change its ruling. [¶] There does not appear to be any further discussion on the record regarding the issue of election or the propriety of the unanimity instruction. However, when the trial court instructed the jury, it provided CALJIC No. 17.01[ FN4] and advised the jury that it had to unanimously agree on the acts that constituted the attempted murder.

> [ FN4] Specifically, the court instructed: "The defendants are accused of having committed the crime of attempted murder. The Prosecution has introduced evidence for the purpose of showing that there's more than one act upon which the conviction on Count I may be based. A defendant may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of the acts. However, in order to return a verdict of guilty to Count I, all jurors must agree that he committed the same act or acts. It is not necessary that the particular act agreed upon be stated in your verdict."

Lodgment no. 5 at 5–6. The Court of Appeal then denied petitioner's claim, stating:

> Criminal defendants have a constitutional right to a unanimous jury verdict. (Cal. Const., art. I, § 16; *People v. Jones* (1990) 51 Cal.3d 294, 321 [270 Cal.Rptr. 611, 792 P.2d 643].) For a conviction to be valid, jurors must "unanimously agree defendant is crimi-

---

**6.** Petitioner's conclusory assertion that the trial court failed to apprise him of the charges against him is without merit. *See* CT 17–20.

nally responsible for 'one discrete criminal event.' " To ensure that jurors do so, courts impose the "either/or" rule: "When an accusatory pleading charges the defendant with a single criminal act and the evidence presented at trial tends to show more than one such unlawful act, *either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act." Thus, if the evidence indicates jurors might disagree as to the particular act a defendant committed, and the prosecution makes no election, the trial court has a sua sponte duty to give CALJIC No. 17.01 or its equivalent. This unanimity instruction is necessary to prevent the jury from "amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done something sufficient to convict on one count." [¶] In the present matter, the trial court satisfied these requirements—it provided the jury with a unanimity instruction pursuant to CALJIC No. 17.01. Nonetheless, ... [petitioner] maintains that because of his demand, the People were *required* to elect which acts involving the gun occurred during the commission of attempted murder for the purpose of the [P.C.] section 12022.53, subdivision (c), discharge of a firearm enhancement.

\* \* \*

... [T]he principle [is] that a failure to elect when multiple acts exists can, and should, be cured by a unanimity instruction. In the present case, CALJIC No. 17.01 was given. [¶] ... [Moreover,] "[n]either an election nor a unanimity instruction is required when the crime falls within the 'continuous conduct' exception." The "continuous conduct" rule

applies when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them. In addition, "where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." This case falls within the continuous course of conduct exception.

\* \* \*

[¶] Here, ... the evidence arguably showed a single continuous attempted murder and use and discharge of a firearm against the single alleged victim by [petitioner]. [Petitioner] could not have been charged with and could not have been convicted of, more than one attempted murder, use of a firearm, and discharge of a firearm. The evidence established that [petitioner's] actions were part of an ongoing and continuing course of conduct in an attempt to murder [Harris]. When [petitioner's] verbal efforts to force [Harris] to pay him the drug money failed, he pointed a gun at [Harris] and pulled the trigger, but the weapon did not fire. [Petitioner] then got into the Jeep and seconds later discharged the gun when the Jeep sped back toward [Harris], who was in his car. This incident took between 30 to 60 seconds. Furthermore, other than claiming he only intended to scare [Harris] with the gun and did not intend to shoot him, [petitioner] did not raise separate defenses for any of the alleged acts upon which his conviction could be premised. Even if he did, there was no reasonable basis for the jury to distinguish between them. Contrary to [petitioner's] claim, all of the alleged wrongful acts were part of one continuous course of conduct. The evidence demon-

strated that [petitioner] intended to kill [Harris], but committed an initial ineffective act; he then jumped into the Jeep, and seconds later, as the Jeep turned back toward [Harris], [petitioner] had apparently corrected the malfunction with his gun and then discharged it several times in [Harris's] direction. Under the circumstances here, "the wrongful acts were successive, compounding, interrelated, and aimed at a single objective" and were "so closely connected" as "to form a single transaction[.]" The alternative alleged wrongful acts here were alternative ways of proving the necessary elements of the same enhancements, personal discharge and use of a firearm. The jury was not required to agree on the manner in which each element was satisfied and therefore the trial court was not required to force the People to elect. [¶] [Petitioner] argues that because the trial court gave a unanimity instruction and the prosecution did not elect the acts, the continuous course of conduct exception does not apply here. However, the giving of the unanimity instruction was superfluous, and it only inured to [petitioner's] benefit as it imposed an additional proof requirement for the jury's consideration.[¶] [Petitioner] cannot show that he was prejudiced by the trial court's failure to force the People to make an election. "[R]efusal will only be prejudicial if an election would have made some significant difference in the trial, whether through the exclusion of evidence, allowing a focused defense, or in some other respect that materially implicates the right to be advised of the charges.". . .

[Petitioner's] criminal acts occurred over a brief time period and were all essentially committed in the same way, [petitioner] was given adequate notice of the evidence by the preliminary hearing, and [petitioner's] sole defense was that he had not intended to kill [Harris] but rather to scare him into paying the drug money. The jury's verdict implies that it did not believe the defense offered. Furthermore, the unanimity instruction was given and to a large extent precluded prejudice on the facts of this case. Hence, the jury necessarily resolved which acts constituted the discharge of a firearm. For the foregoing reasons, we conclude that assuming error occurred the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705.])

Lodgment no. 5 at 5–14 (some citations omitted).

Assuming *arguendo* petitioner has a due process liberty interest in a unanimous verdict, here the trial court specifically instructed the jury that, to return a guilty verdict on the attempted murder charge,[7] "all jurors must agree that [petitioner] committed the same act or acts[,]" CT 158;

---

7. To the extent petitioner attempts to recharacterize Ground One to attack his sentence enhancement under P.C. § 12022.53(c), rather than his attempted murder conviction, *see* Memo. at 5 ("Without an election[,] it is simply impossible to tell whether jurors failed to understand that a true finding made pursuant to Penal Code section 12022.53(c) could be returned only if they unanimously agreed that the attempted murder occurred during the shooting."), "[a] Traverse is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994), *cert. denied*, 514 U.S. 1026, 115 S.Ct. 1378, 131 L.Ed.2d 232 (1995). In any event, as the California Court of Appeal found, "all of the alleged wrongful acts were part of one continuous course of conduct[,]" Lodgment no. 5 at 13, and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 604, 163 L.Ed.2d 407 (2005) (per curiam); *Medley*, 506 F.3d at 862.

RT 464:7–16, and the "jury is presumed to follow its instructions." *Weeks v. Angelone,* 528 U.S. 225, 234, 120 S.Ct. 727, 733, 145 L.Ed.2d 727 (2000); *Zafiro v. United States,* 506 U.S. 534, 540–41, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993).

Further, the California Court of Appeal found any possible error was harmless under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and this finding is neither contrary to, nor an unreasonable application of, clearly established law. *Mitchell v. Esparza,* 540 U.S. 12, 18, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) (per curiam); *see also Inthavong v. Lamarque,* 420 F.3d 1055, 1058–59 (9th Cir.2005) (Under AEDPA, "we must defer to [the California Court of Appeal's harmless error] holding unless it was in conflict with the reasoning or the holdings of [Supreme Court] precedent or if it applied harmless-error review in an objectively unreasonable manner." (citations and internal quotation marks omitted)), *cert. denied,* 547 U.S. 1059, 126 S.Ct. 1660, 164 L.Ed.2d 403 (2006).

Accordingly, the California Supreme Court's denial of Ground One was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VII

■ In *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362–63. However, in Ground Two, petitioner claims *Apprendi* prohibits the trial court's "unlawful and illegal sentence enhancement" under P.C. § 12022.53(c). Petition at 5. Since the jury

specifically found it to be true beyond a reasonable doubt that petitioner intentionally and personally discharged a firearm within the meaning of P.C. § 12022.53(c), CT 105, 151–52, 186, there is no factual basis for an *Apprendi* claim. Accordingly, the California Supreme Court's denial of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VIII

■ The double jeopardy clause protects against successive prosecutions for the same offense after an acquittal or conviction and against multiple punishments for the same offense. *Monge v. California,* 524 U.S. 721, 727–28, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615 (1998); *Witte v. United States,* 515 U.S. 389, 397, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); *Jones v. Thomas,* 491 U.S. 376, 381, 109 S.Ct. 2522, 2526, 105 L.Ed.2d 322 (1989); *see also Plascencia v. Alameida,* 467 F.3d 1190, 1204 (9th Cir.2006) ("The key to determining whether multiple charges and punishments violate double jeopardy is legislative intent."). Sentencing enhancements that increase the penalty for a crime based on the offender's conduct do not offend double jeopardy principles where "a legislature specifically authorizes cumulative punishment under two statutes . . . ." *Hunter,* 459 U.S. at 368, 103 S.Ct. at 679; *Plascencia,* 467 F.3d at 1204.

■ In Ground Three, petitioner claims that his sentence on the firearm enhancements to count 1,[8] when added to

8. Although petitioner's claim focuses on P.C.　§ 12022.53(c), petitioner also refers in pass-

his sentence for attempted murder, constitutes double jeopardy. Petition at 6. There is no merit to this claim.

The Ninth Circuit has recently held that P.C. § 12022.53(d), a companion firearm enhancement statute to P.C. § 12022.53(c), does not violate double jeopardy, stating:

Here the language of California Penal Code § 12022.53 is clear. Subsection (d) provides for a 25 year enhancement when a "firearm is used" to commit murder. There is, therefore, no question as to what the California legislature intended.... [T]he California legislature has simply determined that a "criminal offender may receive additional punishment for any single crime committed with a firearm." Accordingly, we reject [the petitioner's] double jeopardy argument.

*Plascencia,* 467 F.3d at 1204. The exact same reasoning applies to P.C. § 12022.53(c), which, at the time of petitioner's crime, provided:

Notwithstanding any other provision of law, any person who is convicted of a felony specified in subdivision (a),[9] and who in the commission of that felony intentionally and personally discharged a firearm, shall be punished by a term of imprisonment of 20 years in the state prison, which shall be imposed in addition and consecutive to the punishment prescribed for that felony.

P.C. § 12022.53(c) (2002) (footnote added). Thus, the California Legislature expressly intended P.C. § 12022.53(c) to provide "additional punishment" for a defendant who personally discharges a firearm in connec-

tion with the commission of a felony, such as attempted murder, and this additional punishment does not violate double jeopardy. *Plascencia,* 467 F.3d at 1204; *see also People v. Hutchins,* 90 Cal.App.4th 1308, 1313–14, 109 Cal.Rptr.2d 643 (2001) ("What the Legislature has done by enacting [P.C.] section 12022.53 is not to punish the same single criminal act more than once or in more than one way. Instead, in determining that a criminal offender may receive additional punishment for any single crime committed with a firearm, the Legislature has chosen to enhance or expand the punishment imposed on a single underlying crime, where committed by use of a firearm, in order to deter a particular form of violence judged especially threatening to the social fabric.").

Accordingly, the California Supreme Court's denial of Ground Three was neither contrary to, nor an unreasonable application of, clearly established federal law.

## IX

To succeed on a claim of ineffective assistance of trial counsel, a habeas petitioner must demonstrate his attorney's performance was deficient and the deficient performance prejudiced him. *Rompilla v. Beard,* 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The petitioner bears the burden of establishing both components. *Williams v. Taylor,* 529 U.S. 362, 390–91, 120 S.Ct. 1495, 1511–12, 146 L.Ed.2d 389 (2000); *Smith v. Robbins,*

---

ing to his sentence enhancement under P.C. § 12022.5(a)(1), which was stayed under P.C. § 654. CT 209; RT 589:4–12. To the extent petitioner is challenging his stayed sentence enhancement under P.C. § 12022.5(a)(1), that claim is also without merit for the reasons discussed herein. *See May v. Sumner,* 622 F.2d 997, 999 (9th Cir.1980) (no double jeopardy violation since Section "12022.5 [is]

merely a sentencing provision which provide[s] that if a firearm [is] used to commit certain offenses ... increased punishment must ensue").

9. Subdivision (a) makes P.C. § 12022.53 enhancements applicable to attempted murder. P.C. § 12022.53(a)(1), (18)(2002).

528 U.S. 259, 285–86, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000). "Deficient performance is performance which is objectively unreasonable under prevailing professional norms." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir.1990) (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064). Prejudice "focuses on the question whether counsel's deficient performance renders the results of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993); *Williams*, 529 U.S. at 393 n. 17, 120 S.Ct. at 1513 n. 17. However, the Court need not determine whether counsel's performance was deficient before determining whether the defendant suffered prejudice as the result of the alleged deficiencies. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *Smith*, 528 U.S. at 286 n. 14, 120 S.Ct. at 764 n. 14 (same).

 The standards for determining whether trial counsel was ineffective apply equally to determining whether appellate counsel was ineffective, *Smith*, 528 U.S. at 285, 120 S.Ct. at 764; *Cockett v. Ray*, 333 F.3d 938, 944 (9th Cir.2003) (citation omitted), and petitioner bears the burden of establishing both components of the *Strickland* standard, i.e., "that counsel's advice fell below an objective standard of reasonableness, . . . and that there is a reasonable probability that, but for counsel's unprofessional errors, [the petitioner] would have prevailed on appeal." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989); *Cockett*, 333 F.3d at 944. In reviewing appellate counsel's performance, the court will presume that appellate counsel used reasonable tactics; otherwise, it "could dampen the ardor and impair [coun-

sel's] independence . . ., discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir.1997) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2065). Appellate counsel has no constitutional duty to raise every issue, where, in the attorney's judgment, the issue has little or no likelihood of success. *Jones v. Barnes*, 463 U.S. 745, 751–53, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983) (limited on other grounds in *Smith*, 528 U.S. at 287, 120 S.Ct. at 765); *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002). Indeed, as an officer of the court, appellate counsel is under an ethical obligation to refrain from wasting the court's time on meritless arguments. *McCoy v. Wisconsin*, 486 U.S. 429, 436, 108 S.Ct. 1895, 1900, 100 L.Ed.2d 440 (1988).

In Ground Five, petitioner claims his defense counsel was ineffective in that he: (a) "failed to object to prosecutor[']s misstatements of the evidence during closing argument"; and (b) "refused to have charges droped [sic] when prosecutor sought to have charges droped [sic]; Counts IV and V, which are both felonies[.]" In Ground Four, petitioner claims his appellate counsel was ineffective for not raising on appeal: (a) "irregularity of the enhancements and the insufficiency of the evidence to support"; (b) "sufficiency of the evidence to convict"; (c) "prosecutor[ial] misconduct"; (d) "reasons for imposing enh[ ] [ancement] by judge"; and (e) "failure to argue any caselaw [sic] as to the jury not being fully instructed or not being instructed at all as to which enhancement could have been properly found true."

Initially, petitioner has presented no evidence, explanation or argument to support subclaim Four (a) regarding the "irregularity of the enhancements[,]" [10] and subclaims Four(d) and Four (e); thus, the

---

10. Since the Court has found petitioner's *Apprendi* and double jeopardy claims addressed above to be without merit, and petitioner does not otherwise explain subclaim Four (a), appellate counsel's failure to raise petitioner's

Court finds these "conclusory suggestions . . . fall far short of stating a valid claim of constitutional violation[,]" *Jones v. Gomez,* 66 F.3d 199, 205 (9th Cir.1995), *cert. denied,* 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996); *Villafuerte v. Stewart,* 111 F.3d 616, 630–31 (9th Cir.1997), *cert. denied,* 522 U.S. 1079, 118 S.Ct. 860, 139 L.Ed.2d 759 (1998), and will not further address them.

**Prosecutorial Misconduct (Four (c) and Five (a)):**

■ The prosecutor in rebuttal closing argument stated that the bullet found in the street by Officer Gardner had stucco on it. Request for Evidentiary Hearing at 2–6. More specifically, in response to defense counsel's closing argument that petitioner was not really shooting at Harris, but was merely shooting into the air, the prosecutor stated:

> What's this white stuff that looks like stucco on the bullet? This white stuff. You will have this in the jury room. [¶] Does it make sense that we're talking about—does it make sense that we're talking about the missing hole in the building?

RT 548:19–23. Clearly, this was a misstatement of the evidence since, as petitioner contends, there was no evidence presented at trial showing the bullet found at the scene had stucco on it. Nevertheless, petitioner cannot show defense counsel was ineffective for failing to object to this misstatement or that appellate counsel was ineffective for failing to raise on appeal the claim of prosecutorial misconduct based on this misstatement.

Petitioner's defense attorney quite reasonably could have decided, as part of his trial strategy, not to object to the prosecutor's misstatement in rebuttal closing argument because he did not want to draw attention to the error. *See, e.g., United States v. Daas,* 198 F.3d 1167, 1179 (9th Cir.1999) (decision not to object to prosecutor's closing argument "falls within the range of permissible professional conduct of trial counsel"), *cert. denied,* 531 U.S. 999, 121 S.Ct. 498, 148 L.Ed.2d 468 (2000); *United States v. Necoechea,* 986 F.2d 1273, 1281 (9th Cir.1993) ("Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct."); *Werts v. Vaughn,* 228 F.3d 178, 204 (3d Cir.2000) (defense counsel's failure to object to remark in prosecutor's opening statement was reasonable trial strategy since counsel "did not want to draw attention to it by continuously objecting" to it), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001). Since defense counsel's decision to not object falls within the "objectively [ ]reasonable under prevailing professional norms" range of performance, *Hughes,* 898 F.2d at 702, it was not ineffective assistance.

Furthermore, the trial judge repeatedly instructed the jury that an attorney's argument is not evidence,[11] CT 139; RT 437:1–2, 464:22–24; *see also* CT 140 ("Evidence consists of the testimony of witnesses, writings, material objects, or anything presented to the senses and offered to prove the existence or nonexistence of a fact."); RT 437:11–13 (same), and "[a] jury

"irregularity of the enhancements" claim "does not fall below the *Strickland* standard." *Turner,* 281 F.3d at 872; *see also Wildman v. Johnson,* 261 F.3d 832, 840 (9th Cir.2001) ("[Petitioner] cannot sustain his claim for ineffective assistance of appellate counsel because the issues he raises are without merit[.]").

11. Similarly, the prosecutor reminded the jury in his closing argument that "[n]othing that I say is evidence." RT 465:4.

is presumed to follow its instructions." *Weeks,* 528 U.S. at 234, 120 S.Ct. at 733; *Zafiro,* 506 U.S. at 540–41, 113 S.Ct. at 939. In light of the jury instructions, there is little chance the jury construed the prosecutor's misstatement "in an objectionable fashion." *People v. Samayoa,* 15 Cal.4th 795, 842, 64 Cal.Rptr.2d 400, 432, 938 P.2d 2 (1997), *cert. denied,* 522 U.S. 1125, 118 S.Ct. 1071, 140 L.Ed.2d 131 (1998); *People v. Stitely,* 35 Cal.4th 514, 559, 26 Cal.Rptr.3d 1, 37, 108 P.3d 182 (2005), *cert. denied,* 546 U.S. 865, 126 S.Ct. 164, 163 L.Ed.2d 151 (2005). Thus, the prosecutor's errant comment did not so infect the trial with unfairness so as to violate due process, *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986); *People v. Hawthorne,* 46 Cal.4th 67, 90, 92 Cal. Rptr.3d 330, 350, 205 P.3d 245 (2009), and petitioner cannot show he was prejudiced by his attorney's failure to object to the comment.

Since neither petitioner's counsel nor co-defendant's counsel objected to the prosecutor's misstatement or asked for an admonition to the jury, appellate counsel could not have raised a prosecutorial misconduct claim on appeal. *See,* e.g., *People v. Riggs,* 44 Cal.4th 248, 298, 79 Cal. Rptr.3d 648, 692, 187 P.3d 363 (2008) ("A defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." (citation and internal quotation marks omitted)), *cert. denied,* —— U.S. ——, 129 S.Ct. 2386, 173 L.Ed.2d 1302 (2009); *People v. Salcido,* 44 Cal.4th 93, 152, 79 Cal.Rptr.3d 54, 108–09, 186 P.3d 437 (2008) (same), *cert. denied,* —— U.S. ——, 129 S.Ct. 1013, 173 L.Ed.2d 304 (2009). Thus, appellate counsel was not ineffective in failing to raise a claim of prosecutorial misconduct on appeal. Moreover, even if the claim had

been raised, it would not have been successful since the prosecutor's misstatement simply did not "infect[ ] the trial with such 'unfairness as to make the resulting conviction a denial of due process.'" *Hawthorne,* 46 Cal.4th at 90, 92 Cal.Rptr.3d at 350, 205 P.3d 245; *Darden,* 477 U.S. at 181, 106 S.Ct. at 2471. Thus, petitioner also was not prejudiced by appellate counsel's failure to raise this claim on appeal.

### "Refusing" Dismissal Of Charges (Ground Five (b)):

During the trial, but outside of the presence of the jury, the prosecutor proposed "for simplification purposes" to dismiss counts 4 and 5 against petitioner, RT 417:13–16, and an exchange occurred between the trial court and counsel, with petitioner's defense counsel stating "if [the prosecutor] would like to dismiss those charges as to my client, there would be no objection." RT 418:7–9. Therefore, there is no factual basis for this claim. In any event, the trial court ultimately stated:

> The Court: It is a moot point. Your client [defendant] could agree that the sun is not rising tomorrow morning, but it is still rising. I'm not going to dismiss [counts 4 and 5]. There's evidence to support them, and the People are not moving to dismiss.

RT 418:13–23. As these facts show, since the trial court expressly found evidence to support these two charges and would not dismiss them, any objection to dismissal by trial counsel could not have prejudiced petitioner. *Williams,* 529 U.S. at 390, 120 S.Ct. 1495; *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

### Sufficient Evidence (Four (a) & (b)):

▆▆▆▆ Under California law, "'[a]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.'" *People v. Lee,* 31 Cal.4th 613, 623, 3 Cal.Rptr.3d 402, 410, 74 P.3d 176 (2003), *cert. denied sub nom.,*

*Xiong v. California*, 541 U.S. 947, 124 S.Ct. 1680, 158 L.Ed.2d 374 (2004); *People v. Smith*, 37 Cal.4th 733, 739, 37 Cal. Rptr.3d 163, 167, 124 P.3d 730 (2005). "'There is rarely direct evidence of a defendant's intent. Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions.'" *Smith*, 37 Cal.4th at 741, 37 Cal. Rptr.3d at 169, 124 P.3d 730 (citation omitted); *see also People v. Ramos*, 121 Cal. App.4th 1194, 1207–08, 18 Cal.Rptr.3d 167 (2004) ("Generally, the question whether the defendant harbored the required intent must be inferred from the circumstances of the shooting."). Although motive is not an element of attempted murder, it can be evidence of an intent to kill. *Smith*, 37 Cal.4th at 735, 37 Cal.Rptr.3d at 168–69, 124 P.3d 730.

■ Here, the evidence was more than sufficient to support petitioner's conviction of attempted murder.[12] Harris testified petitioner pulled a gun, pointed it at him and pulled the trigger, but the gun did not go off, RT 128:15–19, and petitioner himself admitted that, in the context of a drug deal with Harris gone bad, he fired a gun at Harris's chest and pulled the trigger, but the gun did not fire. RT 331:6–10, 334:27–28. Petitioner further admitted that when he saw Harris' vehicle leave the alley, he thought Harris was trying to follow him and was worried Harris might try to shoot him. *See* RT 349:20–23 ("Because, like I said, the people that I deal with normally carry guns, and I felt that [Harris] would maybe try to shoot me, from what I had just done to him in the alley, if I *didn't shoot off rounds first*." (emphasis added)). The petitioner admit-

ted he then fired at least four rounds at Harris as his vehicle approached Harris' vehicle and passed it, RT 343:17–19, 345:3–5, and Harris testified petitioner was shooting at him—not into the air, as petitioner claimed. RT 131:7–12, 136:4–7. This shooting by petitioner was corroborated by shell casings found at the scene, RT 173:10–13, and a puncture hole at waist level in a wall. RT 90:20–91:4. Clearly, the evidence is more than sufficient for a jury to have reasonably determined petitioner attempted to murder Harris. *See*, e.g., *Smith*, 37 Cal.4th at 741, 37 Cal. Rptr.3d at 169, 124 P.3d 730 ("The act of firing toward a victim at a close, but not point blank, range 'in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of an intent to kill....'" (citations omitted)); *People v. Villegas*, 92 Cal. App.4th 1217, 1224–25, 113 Cal.Rptr.2d 1 (2001) (same). Since a claim of insufficient evidence would not have prevailed on appeal, appellate counsel was not ineffective for failing to raise that claim and petitioner was not prejudiced by that failure. *Turner*, 281 F.3d at 872.

For all these reasons, the California Supreme Court's denial of Grounds Four and Five was neither contrary to, nor an unreasonable application of, clearly established federal law.

### X

In Ground Six, petitioner claims the trial court's refusal to permit the hiring of an expert witness violated his Sixth and Fourteenth "right to have compulsory process for obtaining witnesses in his defense."[13] Petition at 6a.

---

**12.** To the extent petitioner raises an ineffective assistance of appellate counsel claim based on counsel's failure to raise insufficiency of the evidence regarding any conviction other than attempted murder, the claim is conclusory and manifestly insufficient to war-

rant habeas corpus relief. *Sandgathe v. Maass*, 314 F.3d 371, 379 (9th cir.2002); *Villafuerte*, 111 F.3d at 630–31.

**13.** The facts underlying this claim are, as follows: On May 23, 2003, petitioner filed a

The United States Supreme Court has not determined that an "exercise of discretion to exclude expert testimony violates a criminal defendant's constitutional right to present relevant evidence." *Moses v. Payne*, 555 F.3d 742, 758 (9th Cir. 2009); *Quintero v. Tilton*, 588 F.Supp.2d 1121, 1130 (C.D.Cal.2008). Nor has the Supreme Court "clearly establish[ed] 'a controlling legal standard' for evaluating discretionary decisions to exclude the kind of evidence at issue here." *Moses*, 555 F.3d at 758–59. Since there is no Supreme Court authority supporting petitioner's claim, a "state appellate court's determination that the trial court's exercise of discretion to exclude expert testimony ... did not violate [petitioner's] rights cannot be contrary to or an unreasonable application of clearly established Supreme Court precedent." *Id.* at 759; *Wright v. Van Patten*, 552 U.S. 120, 124–28, 128 S.Ct. 743, 746–47, 169 L.Ed.2d 583 (2008) (per curiam); *Carey v. Musladin*, 549 U.S. 70, 76–77, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006); *see also Stenson v. Lambert*, 504 F.3d 873, 881 (9th Cir.2007) ("Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law."), *cert. denied,* —— U.S. ——, 129 S.Ct. 247, 172 L.Ed.2d 188 (2008).

Thus, the California Supreme Court's denial of Ground Six was neither contrary to, nor an unreasonable application of, clearly established federal law.

Motion to Appoint Firearms Expert, CT 49–53, which the trial court denied without prejudice on June 6, 2003. CT 26; RT 1:5–6:6. The putative expert's testimony would have been limited to "demonstrat[ing] the procedure of loading a .25 caliber Beretta semi[-]automatic" and "explain[ing] the two

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

methods of chambering a bullet in this specific model firearm[,]" CT 50:13–15, so the jury could more easily resolve the "central issue: whether [petitioner], never intending to hurt the victim, purposefully fired an unloaded gun at the victim." CT 50:16–1.